## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| New Berry, Inc., d/b/a Berry Metal Company,<br><br>Plaintiff,<br><br>v.<br><br>Todd G. Smith, Allan J. MacRae, and MacRae Technologies, Inc.<br><br>Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br><br><br>JURY TRIAL DEMANDED |

Plaintiff, Berry Metal Company ("Plaintiff" or "BMC"), by and through its attorneys, for its Complaint against Defendants Todd G. Smith, Allan J. MacRae, and MacRae Technologies ("Defendants", or, individually, "Smith", "MacRae", and "MacRae Technologies"), alleges as follows.

### Preliminary Statement

1.      This is an action for patent infringement arising under the Patent Act of the United States, Title 35, United States Code, Section 101 *et seq*.

2.      This is an action for trade secret misappropriation arising under the Defend Trade Secrets Act of the United States, Title 18, United States Code, Section 1836 *et seq*.

3.      This is an action for trade secret misappropriation arising under the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3 et seq.

4.      This is an action for tortious interference with business relationships.

**Jurisdiction**

5.      This Court has original jurisdiction over the subject matter of counts 1-10 pursuant to 28 U.S.C. §§ 1331 and 1338(b).

6.      This Court has original jurisdiction over the subject matter of count 11 pursuant to 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over the subject matter of counts 12-13 pursuant to 28 U.S.C. § 1367.

8.      Personal jurisdiction over all Defendants is proper in this District because Defendants have transacted significant business in this District, both specifically in connection with the conduct at issue in this action and generally through systematic and continuous minimum contacts with this District.

**Venue**

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b).

**Parties**

10.      BMC is a Delaware corporation with its principal place of business at 2408 Evans City Road, Harmony, Pennsylvania 16037.

11.      BMC is a service provider and manufacturer of technology for use in the iron and steel industry, and such technology includes, but is not limited to, cooling staves comprising center manifold technology and wear monitor technology, both for use in connection with metal making furnaces utilized in the iron and steel industry.  Staves, generally, are devices typically installed near or in the wall(s) of a metal making furnace as heat-load wall-cooling elements that help to protect the wall(s) from the heat of a molten metal bath in the furnace.  Wear monitors, generally, are devices extending through or adjacent to the stave, and are typically used to detect

2

changes to refractory materials adjacent to the metal bath in the furnace, such as the thickness of refractory bricks at the hot face of the furnace walls.

12.     Smith is an individual residing, on information and belief, at 708 S. Center Street, Grove City, Pennsylvania 16127.

13.     Smith is a former employee of BMC.

14.     Smith is a collaborator with MacRae and MacRae Technologies regarding technologies used in the iron and steel industry, and a developer of technologies made, used, and sold in the iron and steel industry.

15.     Defendant Allan J. MacRae ("MacRae") is an individual residing, on information and belief, in the State of California, and having a mailing address of 1000 Silver Maple Lane, Hayward, California 94544.

16.     MacRae is, on information and belief, the owner of MacRae Technologies.

17.     MacRae is a collaborator with Smith regarding technologies used in the iron and steel industry, and a developer of technologies made, used, and sold in the iron and steel industry.

18.     Defendant MacRae Technologies, Inc. ("MacRae Technologies"), is a California corporation having a principle place of business at 1000 Silver Maple Lane, Hayward, California 94544.

19.     Upon information and belief, MacRae Technologies owns certain technologies made, used, and sold in the iron and steel industry.

3

**Facts Common To All Counts**

**A.**      **The Asserted Patents.**

20.      United States Patent Number 10,222,124 (the "'124 Patent"), entitled "Stave With External Manifold", was duly and legally issued on March 5, 2019, and names Smith as the inventor.  (A true and correct copy of the '124 Patent is attached hereto as **Exhibit A**.)

21.      The earliest effective filing date listed on the '124 Patent is February 1, 2013.

22.      The '124 Patent generally claims, among other things, subject matter comprising a cooling stave for a metal making furnace, wherein inlet and outlet ends of cooling pipes are disposed in or housed by a manifold extending from an outer housing of the stave.

23.      Claim 1 of the '124 Patent states as follows:

> a stave comprising:
>
> an outer housing;
>
> an inner pipe circuit comprising one or more individual pipes, wherein the one or more individual pipes are housed within the outer housing, wherein each of the one or more individual pipes has an inlet end and an outlet end, and wherein each of the one or more individual pipes may or may not be mechanically connected to another one of the one or more individual pipes; and
>
> a manifold comprising a manifold housing, wherein the manifold is integral with or disposed on or in the outer housing and wherein the manifold housing comprises a perimeter wall having a height and defining an opening;
>
> wherein both of the inlet end and the outlet end of each of the one or more individual pipes are disposed in or housed by the same manifold and wherein both of the inlet end and the outlet end of each of the one or more individual pipes is surrounded at least in part by cast material provided within the opening of the manifold housing to help secure the inlet end and the outlet end of each of the one or more individual pipes to the manifold; and
>
> wherein the height of the perimeter wall of the manifold housing extends away from the outer housing and the inner pipe circuit.

4

24.    BMC is the owner and assignee of the entire right, title, and interest in the '124 Patent.

25.    United States Patent Number 9,121,076 (the "'076 Patent"), entitled "Stave and Brick Constructions Having Refractory Wear Monitors and in Process Thermocouples", was duly and legally issued on September 1, 2015, and names Smith as a co-inventor.  (A true and correct copy of the '076 Patent is attached hereto as **Exhibit B**.).

26.    The '076 Patent generally claims, among other things, subject matter comprising a cooling stave for a metal making furnace, the stave comprising a plurality of channels, a plurality of refractory bricks insertable into one of a plurality of channels, and one or more wear monitors disposed through or adjacent to the stave and/or one or more of the bricks.

27.    Claim 1 of the '076 Patent states as follows:

a stave/brick construction, comprising:

a stave having a plurality of ribs and a plurality of channels, wherein a front face of the stave defines a first opening into each of the channels;

a plurality of bricks wherein each brick is insertable into one of the plurality of channels via its first opening to a position, upon rotation of the brick, partially disposed in the one channel such that one or more portions of the brick at least partially engage one or more surfaces of the one channel and/or of a first rib of the plurality of ribs whereby the brick is locked against removal from the one channel through its first opening via linear movement without first being rotated; and

one or more wear monitors, wherein each wear monitor is disposed through or adjacent to the stave and/or one or more of the bricks.

28.    BMC is the owner and assignee of the entire right, title, and interest in the '076 Patent.

5

**B.      The Asserted Trade Secrets And Defendants' Infringing Activities And Products Concerning The Trade Secrets And Patents.**

29.      From 1996 to 2015, Smith was an employee of BMC, including as a Director of Product/Process Development at BMC's location in Harmony, Pennsylvania.

30.      On July 28, 1996, Smith signed a Berry Metal Company Employment Agreement (the "Agreement").  (A true and correct copy of the Agreement is attached hereto as **Exhibit C**.)

31.      The Agreement required, *inter alia*, Smith's assignment to BMC of all of Smith's discoveries, inventions, and technology improvements during his employment.

32.      The Agreement also prohibited then and continues to prohibit any disclosure or use by Smith of confidential and/or proprietary information and technology owned by BMC, including trade secrets concerning, *inter alia*, specifications, tolerances, manufacturing methods, and installation methods that pertain to BMC products and services (the "BMC Trade Secrets").

33.      While an employee at BMC, Smith developed and is the named inventor for BMC's '124 Patent.

34.      While an employee at BMC, Smith developed and is a named co-inventor for BMC's '076 Patent.

35.      On information and belief, during Smith's employment at BMC and at times thereafter (*i.e.*, 2015 through the present day), Smith misappropriated, used, and continues to use and misappropriate the BMC Trade Secrets, both individually and in collaboration with MacRae and MacRae Technologies.

36.      The BMC Trade Secrets are not generally known to the public and confer economic benefit on BMC because the BMC Trade Secrets are kept secret.

37.      BMC has protected the BMC Trade Secrets from improper disclosure or unauthorized use at all relevant times in a manner that has always been reasonable under the

6

circumstances – including through very limited dissemination of and access to the BMC Trade Secrets, written employee policies and confidentiality agreements, and other reasonable measures and safeguards directed towards the protection of BMC's proprietary information.

38.     On information and belief, Smith has, in connection with his longstanding collaboration with MacRae, shared with MacRae and MacRae Technologies the BMC Trade Secrets that Smith developed and/or become aware of during his employment at BMC.

39.     On November 16, 2017, MacRae filed United States Patent Application No. 15/815,343, entitled "Long Campaign Life Stave Coolers for Circular Furnaces with Containment Shells," which names MacRae as the inventor.

40.     On May 8, 2018, United States Patent No. 9,963,754 (the "'754 Patent") was issued from the application.  November 16, 2017 is the earliest effective filing date listed on the face of the '754 Patent.

41.     On March 6, 2019 MacRae assigned the '754 Patent from himself to MacRae Technologies.

42.     The '754 Patent describes and claims staves comprising center manifold technology.

43.     At least claim 1 of BMC's '124 Patent reads on the staves comprising center manifold technology described and claimed in the '754 Patent.  Accordingly, BMC's '124 Patent is a dominating patent over the '754 Patent, particularly because the earliest effective filing date of the '124 Patent antedates that of the '754 Patent by at least 4 years and 9 months, and possibly longer under first-to-invent rules and laws that apply to the '124 Patent.

7

44.    In the winter of 2017 to 2018, United States Steel Corporation ("USS"), a customer of BMC, requested a proposal for the replacement of cooling staves for several metal making furnaces at USS's facility in Gary, Indiana (the "Gary Works").

45.    As part of its request, USS expressed its preference to make an in-kind replacement of the staves then in the furnaces.

46.    Satisfaction of USS's request that there be an in-kind replacement required the infringement of BMC's patents and use of the knowledge and use of BMC Trade Secrets, including that pertaining to the installation of staves having center manifold technology from the outside of a metal making furnace.

47.    Although BMC's proposal was preliminarily approved by USS, upon information and belief, BMC later learned that it lost the business because USS had elected to replace the staves at the Gary Works with staves comprising center manifold technology manufactured by a Brazilian company, Cecal Industria e Comercio Ltda. of Lorena, São Paolo, Brazil ("Cecal", and the aforementioned staves being the "Infringing Staves").

48.    On information and belief, the manufacture of the Infringing Staves by Cecal was done with direct assistance from, and with inducement by, Defendants and in accordance with a purported license to Cecal of the '754 Patent by Defendants MacRae and MacRae Technologies, despite Defendants' knowledge of the '124 Patent and its dominance over the '754 Patent.

49.    On August 3, 2018, BMC sent a notice letter to Cecal regarding BMC's good faith belief that Cecal was manufacturing the Infringing Staves pursuant to direction from Defendants, and in that letter BMC advised Cecal of BMC's claim to rights in the inventions comprising the later issued '124 Patent.

8

50.     Upon information and belief, the Infringing Staves were marketed and offered for sale to USS by Defendants.

51.     Upon information and belief, Cecal was induced to manufacture the Infringing Staves by Defendants.

52.     Upon information and belief, the Infringing Staves were shipped from Brazil and imported into United States by Defendants.

53.     Upon information and belief, the Infringing Staves were sold to USS by Defendants via a transaction that remains ongoing.

54.     In March 2019, because USS is a customer of BMC, employees of BMC were on site for an outage, and then saw the Infringing Staves manufactured for USS prior to installation.

55.     Berry Metal, after having studied the Infringing Staves, found that, to the best of its knowledge, on information and belief, and without the luxury of possessing or deconstructing the Infringing Staves presumably owned by USS, that the Infringing Staves are covered by at least claim 1 of the '124 Patent.

56.     In particular, the Infringing Staves comprise the conspicuous manifold feature having cooling pipes that are used in the stave and that help to cool the metal making furnaces.

57.     Also during BMC's March 2019 visit to USS, as described above, BMC employees further determined that, after having studied the Infringing Staves and found, to the best of BMC's knowledge, on information and belief, and without the luxury of possessing or deconstructing the staves presumably owned by USS, that the Infringing Staves are covered by at least claim 1 of the '076 Patent.

58.     In particular, the Infringing Staves comprise the conspicuous feature having a channel or orifice therethrough that was installed specifically to receive and accommodate wear monitors manufactured by BMC.

59.     Upon information and belief, as of March 5, 2019, the Infringing Staves were on site at the Gary Works but awaiting installation pursuant to further assistance from Defendants, and use in operation thereafter in metal making furnaces owned by USS.

60.     Upon information and belief, Defendants have and continue to infringe the '124 Patent by making, using, selling, and/or offering for sale the Infringing Staves in the United States and importing into the United States the Infringing Staves that embody or use the inventions claimed in the '124 Patent.

61.     More specifically, the Infringing Staves are cooling staves comprising the center manifold technology covered by the '124 Patent claims.

62.     Upon information and belief, Defendants have and continue to infringe the '076 Patent by making, using, selling, and/or offering for sale the Infringing Staves in the United States and importing into the United States the Infringing Staves that embody or use the inventions claimed in the '076 Patent.

63.     More specifically, the Infringing Staves are cooling staves specifically designed to accommodate a BMC wear monitor covered by the '076 Patent.

64.     Upon information and belief, Defendants have been, and are, inducing infringement of the '124 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Infringing Staves that embody or use the inventions claimed in the '124 Patent.

10

65.     Upon information and belief, Defendants have been, and are, inducing infringement of the '076 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Infringing Staves that embody or use the inventions claimed in the '076 Patent.

66.     Specifically, pursuant to the above facts, Defendants specifically intended for Cecal to make the Infringing Staves and for USS to use them.

67.     Additionally, at least because Smith is the inventor of the '124 Patent, and because Defendants were, and are, close collaborators that together made or had made the Infringing Staves, Defendants knew that such acts by Cecal and USS would infringe the '124 Patent.

68.     Additionally, at least because Smith is a co-inventor of the '076 Patent, and because Defendants were, and are, close collaborators that together made or had made the Infringing Staves, Defendants knew that such acts by Cecal and USS would infringe the '076 Patent.

69.     Upon information and belief, Defendants have been and are continuing to contributorily infringe the '124 Patent by selling or offering to sell the Infringing Staves, knowing them to be especially made or especially adapted for practicing the inventions of the '124 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

70.     Upon information and belief, Defendants have been and are continuing to contributorily infringe the '076 Patent by selling or offering to sell the Infringing Staves, knowing them to be especially made or especially adapted for practicing the inventions of the '076 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

71.     Specifically, and pursuant to the above facts, Defendants knew and do know that the Infringing Staves are especially made for a product that is both patented and infringing and

11

there is no substantial non-infringing use of the Infringing Staves, at least because Smith is the inventor of the '124 Patent, and Defendants were, and remain, close collaborators who together made or had made the Infringing Staves for a BMC customer.

72.     Specifically, and pursuant to the above facts, Defendants knew and do know that the Infringing Staves are especially made for a product that is both patented and infringing and there is no substantial non-infringing use of the Infringing Staves, at least because Smith is a co-inventor of the '076 Patent, and Defendants were, and remain, close collaborators who together made or had made the Infringing Staves for a BMC customer.

73.     Upon information and belief, Defendants have known of the existence of the '124 Patent, and their acts of infringement have been willful and in disregard for the '124 Patent, without any reasonable basis for believing that Defendants had a right to engage in the infringing conduct.

74.     Upon information and belief, Defendants have known of the existence of the '076 Patent, and their acts of infringement have been willful and in disregard for the '076 Patent, without any reasonable basis for believing that Defendants had a right to engage in the infringing conduct

75.     At the very least, Defendants had knowledge of the '124 Patent because Smith is the inventor of the '124 Patent, and Defendants were, and are, close collaborators who together made or had made the Infringing Staves for a BMC customer.

76.     Moreover, BMC sent the notice letter to Cecal regarding the application for the '124 Patent while Cecal was manufacturing or had manufactured the Infringing Staves for Defendants.

77.     At the very least, Defendants had knowledge of the '076 Patent because Smith is a co-inventor of the '076 Patent, and Defendants were, and are, close collaborators who together made or had made the Infringing Staves for a BMC customer.

78.     If Defendants are permitted to further practice the '124 Patent, or disclose the BMC Trade Secrets, BMC will suffer significant irreparable harm and loss of revenue as a result of Defendants' misappropriation of Berry Metal intellectual property.

79.     If Defendants are permitted to further practice the '076 Patent, or disclose the BMC Trade Secrets, BMC will suffer significant irreparable harm and loss of revenue as a result of Defendants' misappropriation of Berry Metal intellectual property.

80.     Defendants' conduct has caused past monetary damage to BMC, immediately threatens future violations of BMC's intellectual property and, if permitted to continue, will cause BMC to suffer significant irreparable harm and loss of revenue.

81.     Upon information and belief, with full knowledge of the BMC intellectual property rights at issue, each of Defendants continues to manufacture, have manufactured, use, sell, and/or offer for sale the Infringing Staves in the United States, or therein continues to directly and/or indirectly infringe at least one of the claims of the '124 Patent, including by offering for sale the Infringing Staves to customers of BMC.

82.     Upon information and belief, with full knowledge of the BMC intellectual property rights at issue, each of Defendants continues to manufacture, have manufactured, use, sell, and/or offer for sale the Infringing Staves in the United States, or therein continues to directly and/or indirectly infringe at least one of the claims of the '076 Patent, including by offering for sale the Infringing Staves to customers of BMC.

221572623.1 89873/344821

**COUNT ONE:**
**Direct Patent Infringement Of The '124 Patent Against Smith**
**Under The United States Patent Act, 35 U.S.C. § 271(A)**

83.     BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

84.     On information and belief, Smith has been, and is, infringing the '124 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Infringing Staves, in violation of 35 U.S.C. § 271(a).

85.     Smith's infringement has been, and continues to be, knowing, intentional, and willful.

86.     Smith's acts of infringement of the '124 Patent have caused, and will continue to cause, BMC damages for which BMC is entitled to compensation pursuant to 35 U.S.C. § 284.

87.     Smith's acts of infringement of the '124 Patent have caused, and will continue to cause, BMC immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

88.     BMC has no adequate remedy at law.

89.     This case is exceptional and, therefore, BMC is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

**COUNT TWO:**
**Direct Patent Infringement of the '124 Patent Against MacRae and MacRae Technologies**
**Under the United States Patent Act, 35 U.S.C. § 271(a)**

90.     BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

14

91.     On information and belief, MacRae and MacRae Technologies have been, and are, infringing the '124 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Infringing Staves, in violation of 35 U.S.C. § 271(a).

92.     MacRae's and MacRae Technologies' infringement has been, and continues to be, knowing, intentional, and willful.

93.     MacRae's and MacRae Technologies' acts of infringement of the '124 Patent have caused, and will continue to cause, BMC damages for which BMC is entitled to compensation pursuant to 35 U.S.C. § 284.

94.     MacRae's and MacRae Technologies' acts of infringement of the '124 Patent have caused, and will continue to cause, BMC immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

95.     BMC has no adequate remedy at law.

96.     This case is exceptional and, therefore, BMC is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## COUNT THREE:
### Indirect (Inducement) Patent Infringement of the '124 Patent Against Smith Under the United States Patent Act, 35 U.S.C. § 271(b)

97.     BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

98.     On information and belief, Smith has been, and is, inducing infringement of the '124 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Infringing Staves that embody or use the invention claimed in the '124 Patent in violation of 35 U.S.C. § 271(b).

15

99. Smith's infringement has been, and continues to be, knowing, intentional, and willful.

100. Smith's acts of infringement of the '124 Patent have caused, and will continue to cause, BMC damages for which BMC is entitled to compensation pursuant to 35 U.S.C. § 284.

101. Smith's acts of infringement of the '124 Patent have caused, and will continue to cause, BMC immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

102. BMC has no adequate remedy at law.

103. This case is exceptional and, therefore, BMC is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

**COUNT FOUR:**
**Indirect (Inducement) Patent Infringement of the '124 Patent**
**Against MacRae and MacRae Technologies**
**Under the United States Patent Act, 35 U.S.C. § 271(b)**

104. BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

105. On information and belief, MacRae and MacRae Technologies have been, and are, inducing infringement of the '124 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Infringing Staves that embody or use the invention claimed in the '124 Patent in violation of 35 U.S.C. § 271(b).

106. MacRae's and MacRae Technologies' infringement has been, and continues to be, knowing, intentional, and willful.

16

107.    MacRae's and MacRae Technologies' acts of infringement of the '124 Patent have caused, and will continue to cause, BMC damages for which BMC is entitled to compensation pursuant to 35 U.S.C. § 284.

108.    MacRae's and MacRae Technologies' acts of infringement of the '124 Patent have caused, and will continue to cause, BMC immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

109.    BMC has no adequate remedy at law.

110.    This case is exceptional and, therefore, BMC is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

**COUNT FIVE:**
**Indirect (Contributory) Patent Infringement of the '124 Patent Against Smith**
**Under the United States Patent Act, 35 U.S.C. § 271(c)**

111.    BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

112.    On information and belief, Smith has been, and is, contributing to the infringement of the '124 Patent by selling or offering to sell the Infringing Staves, knowing them to be especially made or especially adapted for practicing the invention of the '124 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

113.    Smith's infringement has been, and continues to be, knowing, intentional, and willful.

114.    Smith's acts of infringement of the '124 Patent have caused, and will continue to cause, BMC damages for which BMC is entitled to compensation pursuant to 35 U.S.C. § 284.

17

115.    Smith's acts of infringement of the '124 Patent have caused, and will continue to cause, BMC immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.  BMC has no adequate remedy at law.

116.    This case is exceptional and, therefore, BMC is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

**COUNT SIX:**
**Indirect (Contributory) Patent Infringement of the '124 Patent**
**Against MacRae and MacRae Technologies**
**Under the United States Patent Act, 35 U.S.C. § 271(c)**

117.    BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

118.    On information and belief, MacRae and MacRae Technologies have been, and are, contributing to the infringement of the '124 Patent by selling or offering to sell the Infringing Staves, knowing them to be especially made or especially adapted for practicing the invention of the '124 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

119.    MacRae's and MacRae Technologies' infringement has been, and continues to be, knowing, intentional, and willful.

120.    MacRae's and MacRae Technologies' acts of infringement of the '124 Patent have caused, and will continue to cause, BMC damages for which BMC is entitled to compensation pursuant to 35 U.S.C. § 284.

121.    MacRae's and MacRae Technologies' acts of infringement of the '124 Patent have caused, and will continue to cause, BMC immediate and irreparable harm unless such infringing

18

activities are enjoined by this Court pursuant to 35 U.S.C. § 283.  BMC has no adequate remedy at law.

122.    This case is exceptional and, therefore, BMC is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

**COUNT SEVEN:**
**Indirect (Inducement) Patent Infringement of the '076 Patent Against Smith**
<u>**Under the United States Patent Act, 35 U.S.C. § 271(b)**</u>

123.    BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

124.    On information and belief, Smith has been, and is, inducing infringement of the '076 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Infringing Staves that embody or use the invention claimed in the '076 Patent in violation of 35 U.S.C. § 271(b).

125.    Smith's infringement has been, and continues to be, knowing, intentional, and willful.

126.    Smith's acts of infringement of the '076 Patent have caused, and will continue to cause, BMC damages for which BMC is entitled to compensation pursuant to 35 U.S.C. § 284.

127.    Smith's acts of infringement of the '076 Patent have caused, and will continue to cause, BMC immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.  BMC has no adequate remedy at law.

128.    This case is exceptional and, therefore, BMC is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

221572623.1 89873/344821

## COUNT EIGHT:
### Indirect (Inducement) Patent Infringement of the '076 Patent
### Against MacRae and MacRae Technologies
### Under the United States Patent Act, 35 U.S.C. § 271(b)

129.    BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

130.    On information and belief, MacRae and MacRae Technologies have been, and are, inducing infringement of the '076 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Infringing Staves that embody or use the invention claimed in the '076 Patent in violation of 35 U.S.C. § 271(b).

131.    MacRae's and MacRae Technologies' infringement has been, and continues to be, knowing, intentional, and willful.

132.    MacRae's and MacRae Technologies' acts of infringement of the '076 Patent have caused, and will continue to cause, BMC damages for which BMC is entitled to compensation pursuant to 35 U.S.C. § 284.

133.    MacRae's and MacRae Technologies' acts of infringement of the '076 Patent have caused, and will continue to cause, BMC immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.  BMC has no adequate remedy at law.

134.    This case is exceptional and, therefore, BMC is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

20

**COUNT NINE:**
**Indirect (Contributory) Patent Infringement of the '076 Patent Against Smith**
**Under the United States Patent Act, 35 U.S.C. § 271(c)**

135.    BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

136.    On information and belief, Smith has been and is contributing to the infringement of the '076 Patent by selling or offering to sell the Infringing Staves, knowing them to be especially made or especially adapted for practicing the invention of the '076 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).  Moreover, the Infringing Staves are particularly designed to accommodate a wear monitor manufactured by BMC.

137.    Smith's infringement has been, and continues to be, knowing, intentional, and willful.

138.    Smith's acts of infringement of the '076 Patent have caused, and will continue to cause, BMC damages for which BMC is entitled to compensation pursuant to 35 U.S.C. § 284.

139.    Smith's acts of infringement of the '076 Patent have caused, and will continue to cause, BMC immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.  BMC has no adequate remedy at law.

140.    This case is exceptional and, therefore, BMC is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

**COUNT TEN:**
**Indirect (Contributory) Patent Infringement of the '076 Patent**
**Against MacRae and MacRae Technologies**
**Under the United States Patent Act, 35 U.S.C. § 271(c)**

141.    BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

142.    On information and belief, MacRae and MacRae Technologies has been and is contributing to the infringement of the '076 Patent by selling or offering to sell the Infringing Staves, knowing them to be especially made or especially adapted for practicing the invention of the '076 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).   Moreover, the Infringing Staves are particularly designed to accommodate a wear monitor manufactured by BMC.

143.    MacRae's and MacRae Technologies' infringement has been, and continues to be, knowing, intentional, and willful.

144.    MacRae's and MacRae Technologies' acts of infringement of the '076 Patent have caused, and will continue to cause, BMC damages for which BMC is entitled to compensation pursuant to 35 U.S.C. § 284.

145.    MacRae's and MacRae Technologies' acts of infringement of the '076 Patent have caused, and will continue to cause, BMC immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

146.    BMC has no adequate remedy at law.

147.    This case is exceptional and, therefore, BMC is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## COUNT ELEVEN:
### Trade Secret Misappropriation Against MacRae and MacRae Technologies
#### Under the United States Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*[1]

148.   BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

149.   BMC owns and possesses the BMC Trade Secrets.

150.   BMC's Trade Secrets are different from its patent rights because they are not expressly covered by the claims in any patent and strict secrecy is maintained by BMC.

151.   BMC's Trade Secrets relate to products and services manufactured by BMC, including but not limited to cooling staves comprising center manifold technology and wear monitors, which are sold in interstate commerce by BMC.

152.   More specifically, and as an example of a BMC Trade Secret at issue here, BMC possesses as a Trade Secret comprising certain processes and tolerances for maintaining the proper placement of piping within its staves during casting and manufacturing.

153.   As a further example of a BMC Trade Secret at issue here, BMC possesses as a Trade Secret comprising certain manufacturing processes and compositional elements of the manifold for use in its center manifold stave design.

154.   The BMC Trade Secrets are not generally known to the public and confer economic benefit on BMC because the BMC Trade Secrets are kept secret.

155.   BMC has protected the BMC Trade Secrets from improper disclosure or unauthorized use at all relevant times in a manner that has always been reasonable under the

---

[1] Prior to the installation of the Infringing Staves, Plaintiff had sued Smith for his improper use of the BMC Trade Secrets. That action, *Berry Metal Company v. Todd G. Smith*, Docket No. 2:18-cv-01024-CRE (W.D. Pa.), is currently pending before the United States District Court for the Western District of Pennsylvania. Plaintiff is raising the patent infringement claims against both defendants and the instant Trade Secret claims before this Court because the Northern District of Indiana is the situs for the ongoing infringement.

circumstances – including through very limited dissemination of and access to the BMC Trade Secrets, written employee policies and confidentiality agreements, and other reasonable measures and safeguards directed towards the protection of BMC's proprietary information.

156.    In violation of BMC's rights, MacRae and MacRae Technologies, whether independently or in connection with Smith, misappropriated the BMC Trade Secrets in the improper and unlawful manner as alleged herein.

157.    MacRae's and MacRae Technologies' misappropriation of the BMC Trade Secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive.

158.    On information and belief, if MacRae and MacRae Technologies are not enjoined, MacRae and MacRae Technologies will continue to misappropriate and use the BMC Trade Secrets for their own benefit and to BMC's detriment.

159.    As the direct and proximate result of MacRae and MacRae Technologies conduct, BMC has suffered and, if MacRae's and MacRae Technologies' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.

160.    Because BMC's remedy at law is inadequate, BMC also seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect the BMC Trade Secrets and to protect other legitimate business interests.

161.    BMC's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

162.    BMC has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorney's fees.

**COUNT TWELVE:**
**Trade Secret Misappropriation Against MacRae and MacRae Technologies**
**Under the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3 *et seq*.**

163.    BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

164.    BMC owns and possesses the BMC Trade Secrets.

165.    BMC's Trade Secrets are different from its patent rights because they are not expressly covered by the claims in any patent and strict secrecy is maintained by BMC.

166.    BMC's Trade Secrets relate to products and services manufactured by BMC, including but not limited to cooling staves comprising center manifold technology and wear monitors, which are sold in interstate commerce by BMC.

167.    More specifically, and as an example of a BMC Trade Secret at issue here, BMC possesses as a Trade Secret comprising certain processes and tolerances for maintaining the proper placement of piping within its staves during casting and manufacturing.

168.    As a further example of a BMC Trade Secret at issue here, BMC possesses as a Trade Secret comprising certain manufacturing processes and compositional elements of the manifold for use in its center manifold stave design.

169.    The BMC Trade Secrets are not generally known to the public and confer economic benefit on BMC because the BMC Trade Secrets are kept secret.

170.    BMC has protected the BMC Trade Secrets from improper disclosure or unauthorized use at all relevant times in a manner that has always been reasonable under the circumstances – including through very limited dissemination of and access to the BMC Trade Secrets, written employee policies and confidentiality agreements, and other reasonable measures and safeguards directed towards the protection of BMC's proprietary information.

25

171.   In violation of BMC's rights, MacRae and MacRae Technologies, whether independently or in connection with Smith, misappropriated the BMC Trade Secrets in the improper and unlawful manner as alleged herein.

172.   MacRae's and MacRae Technologies' misappropriation of the BMC Trade Secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive.

173.   On information and belief, MacRae and MacRae Technologies acquired the BMC Trade Secrets, possibly via Smith's knowledge of the BMC Trade Secrets and MacRae's and MacRae Technologies' collaboration therewith, knowing that the BMC Trade Secrets were acquired by improper means.

174.   Alternatively, MacRae and MacRae Technologies derived or acquired the BMC Trade Secrets from or through a person, possibly Smith, who had utilized improper means to acquire it or that owed a duty to the BMC, which is now seeking relief to maintain the secrecy and limit the use of the BMC Trade Secrets.

175.   On information and belief, if MacRae and MacRae Technologies are not enjoined, MacRae and MacRae Technologies will continue to misappropriate and use the BMC Trade Secrets for their own benefit and to BMC's detriment.

176.   As the direct and proximate result of MacRae and MacRae Technologies conduct, BMC has suffered and, if MacRae's and MacRae Technologies' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because BMC's remedy at law is inadequate, BMC also seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect the BMC Trade Secrets and to protect other legitimate business interests.

26

177.   BMC's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

178.   BMC has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorney's fees.

## COUNT THIRTEEN:
### Tortious Interference with Business Relationship Against All Defendants

179.   BMC repeats and realleges the allegations contained in Paragraphs 1-83 as if fully set forth herein.

180.   Without limitation as alleged herein, BMC has enjoyed a continuing relationship with USS, of which each of Defendants on information and belief is informed and aware, that was evident in the preliminary acceptance of the BMC quotations for the RFP and an immediate and definite business opportunity to continue that relationship with USS.

181.   Through their acts of misappropriation and interference as alleged herein, however, Defendants have wrongfully and intentionally acted to harm BMC by inducing the disruption of BMC's business relationship with USS and interfering with and preventing BMC from further developing and continuing its relationship with USS.

182.   No privilege or justification exists for Defendants' intentional interference with BMC's prospective business opportunity and relationship with USS through the unlawful use and misappropriation of BMC intellectual property in this manner.

183.   Through their interference with BMC's prospective business opportunity and relationships, Defendants acted intentionally, willfully, maliciously, and with reckless indifference to the rights of BMC.

184.     As a result of Defendants' intentional interference with BMC's prospective business opportunity and relationships, BMC has been and will continue to be immediately and irreparably harmed and does not have an adequate remedy at law.

185.     As a result of Defendants' intentional interference with BMC's prospective business opportunity and relationships, BMC has suffered and will further suffer damages in the form of lost information, business, profits, customer demand, and industry goodwill, without limitation.

186.     Defendants' intentional interference with BMC's prospective business opportunity and economic advantage has been willful and malicious, warranting an award of punitive damages.

187.     As a result of the unlawful acts committed by Defendants, BMC is entitled to an award of actual and compensatory damages, punitive damages, preliminary and permanent injunctive relief, and such other relief as the Court deems just and proper.

221572623.1 89873/344821

## **PRAYER FOR RELIEF**

**WHEREFORE**, BMC requests judgment in its favor and against Defendant and asks this Court to declare, *inter alia*:

A.      that each Defendant be declared to have directly infringed and induced others to infringe, and contributorily infringed at least one claim of the '124 Patent and the '076 Patent;

B.      that MacRae and MacRae Technologies misappropriated the BMC Trade Secrets;

C.      that each Defendant, together with its respective officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, successors and all others in active concert or participation with any or all Defendants. or acting on any or all of their behalf, be temporarily, preliminarily, and permanently enjoined from further infringement of the '124 Patent and the '076 Patent;

D.      that MacRae and MacRae Technologies, together with their respective officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, successors and all others in active concert or participation with any or all Defendants. or acting on any or all of their behalf, be temporarily, preliminarily, and permanently enjoined from further using, disclosing, or otherwise misappropriating any and all BMC Trade Secrets;

E.      that each Defendant, together with its respective officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, successors and all others in active concert or participation with any or all Defendants. or acting on any or all of their behalf, be temporarily, preliminarily, and permanently enjoined from further tortious interference with BMC's business relationships with USS or other

29

customers of BMC, including though the improper use or disclosure of any and all BMC intellectual property in conjunction with any bid, quotation, or supply of goods or services;

F.      that each Defendant be ordered to account for and pay to BMC pursuant to 35 U.S.C. § 284 all damages caused to BMC by reason of Defendants' infringement of the '124 Patent and the '076 Patent, including any enhanced damages, as well as damages for convoyed sales;

G.      that MacRae and MacRae Technologies be ordered to account for and pay to BMC the amount of all actual, compensatory, exemplary, punitive, and other damages sustained by BMC by reason of MacRae's and MacRae Technologies 'violations of the Defend Trade Secrets Act, the Indiana Uniform Trade Secrets Act, the common law, or other applicable authority;

H.      that each Defendant be ordered to account for and pay to BMC the amount of all actual, compensatory, exemplary, punitive, and other damages sustained by BMC by reason of each Defendant's tortious interference with BMC's business relationships;

I.      that this be declared an "exceptional case" pursuant to 35 U.S.C § 285, that each Defendant be ordered to pay BMC's attorney's fees and costs, and that BMC be granted both pre-judgment and post-judgment interest on the damages caused to it by reason of each Defendant's infringement of the '124 Patent and the '024 Patent;

J.      that MacRae and MacRae Technologies be ordered to account for and pay to BMC the amount of all pre-judgment and post-judgment interest, attorney's fees,

30

costs, and expenses incurred by BMC in conjunction with the pursuit of this action and recoverable pursuant to the Defend Trade Secrets Act, the Indiana Uniform Trade Secrets Act, the common law, or other applicable authority; and

K.    that BMC be awarded such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

BMC requests a trial by jury on all claims and issues so triable.

Respectfully submitted,

BERRY METAL COMPANY

Dated:  May 2, 2019

By: /s/ Eric Dorkin
Eric Dorkin
Clark Hill PLC
130 E. Randolph St., Suite 3900
Chicago, IL 60601
Tel: (312) 985-5900
Fax: (312) 985-5999
edorkin@clarkhill.com
*Attorneys for Plaintiff, Berry Metal Company*

31

## Index of Exhibits

A. United States Patent No. 10,222,124
B. United States Patent No. 9,121,076
C. Berry Metal Company Employment Agreement – Todd Smith

221572623.1 89873/344821

## **VERIFICATION**

I, David R. Werner, the President & COO of New Berry, Inc. d/b/a Berry Metal Company, do verify that the averments of fact made in the within Verified Complaint are true and correct to the best of my personal knowledge, or information and belief.

I understand that any false statements within my knowledge contained herein are made subject to penalty under 28 U.S.C. § 1746, relating to unsworn declarations.

Date: April 30, 2019